UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

UNITED STATES OF AMERICA,

               Plaintiff,

       v.

NICOLAS RIVERA-FERRER,

              Defendant.

Case No. 1:15-CR-00260-EJL

**MEMORANDUM DECISION
AND ORDER**

The Court has before it Defendant's Motion to Dismiss Indictment (Dkt. 17).  The parties have filed responsive briefing and the matter is now ripe for the Court's consideration.  Having fully review the record herein, the Court finds that the facts and legal arguments are adequately presented in the briefs and record.  Accordingly, in the interest of avoiding further delay, and because the Court conclusively finds that the decisional process would not be significantly aided by oral argument, the Motion will be decided on the record before this Court without oral argument.

**FACTUAL AND PROCEDURAL BACKGROUND[1]**

Defendant Nicolas Rivera-Ferrer ("Defendant") was born in Mexico on September 10, 1969.  Defendant first entered the United States in approximately 1984 as a 15 year old, and began working as a farm laborer.  In 1987, Defendant applied for temporary

---

[1] Unless otherwise referenced, the following facts are taken from Defendant's Motion to Dismiss Indictment and supporting documentation and are not disputed by the Government.

residency pursuant to the Special Agricultural Workers ("SAW") program under § 210 of the Immigration and Nationality Act ("INA"). 8 U.S.C. § 1160. On August 27, 1987, Defendant was granted temporary resident status. In 1988, Defendant met and married his first wife, a United States citizen. They moved to Gooding, Idaho, and in 1990 had a daughter together. On December 1, 1990, Defendant was granted legal permanent resident ("LPR") status. Defendant and his first wife decided to divorce around 1991, and Defendant moved to Arizona to find work.

Thereafter, in 1993, while driving from Arizona to Idaho to visit his daughter, Defendant was stopped, arrested, and charged with possession of a controlled substance with intent to sell, in violation of Nevada Revised Statute § 453.337 (1993).[2] On February 15, 1995, Defendant pled guilty to the charge. The Nevada court sentenced Defendant to twelve years but suspended this sentence and placed him on five years of probation.

Defendant successfully transferred his probation to Idaho in order to care for his then five-year old daughter. Once he moved to Idaho, Defendant's daughter lived with him and he supported her. In June of 1995, Defendant reported to one of his probation meetings and found Immigration and Naturalization Service ("INS") officers waiting for him. Defendant was ultimately arrested and served with an affidavit to show cause, alleging his deportability based on his Nevada conviction.

---

[2] Defendant claims he made the mistake of agreeing to transport some packages for a friend of his girlfriend. The packages contained the Marijuana he was charged with possessing with intent to sell.

Defendant retained attorney Stephen Bywater to represent him in his removal proceeding. Defendant paid Mr. Bywater approximately $1500 as a retainer, and understood that Mr. Bywater would represent him in all of his immigration matters and would pursue any relief available to allow him to remain in the United States. On February 6, 1996, Mr. Bywater represented Defendant during his deportation hearing before Immigration Judge Anna Ho ("IJ"). Mr. Bywater requested an opportunity to submit an application for suspension of deportation, but the INS attorney noted that Defendant's aggravated felony disqualified him from suspension of deportation. The IJ then set a briefing schedule for the parties on the issue of Defendant's eligibility for suspension of deportation. At no point during the hearing did the IJ reference or discuss Defendant's potential qualification for waiver under § 212(c) of the INA. Nor did Mr. Bywater ever file an EOIR I-181, the application for § 212(c) relief.[3]

Mr. Bywater's brief on his client's eligibility for suspension of deportation was due on March 15, 1996. Instead of filing the brief, Mr. Bywater submitted a letter to the court on March 11, 1996 stating "[u]nfortunately, due to time constraints and financial constraints, I will not be filing such a brief." (Dkt. 17-1, Ex. K at 3.) On May 28, 1996, the IJ issued a written order ruling Defendant was ineligible for suspension of

---

[3] Prior to 1996, § 212(c) provided broad discretion to waive deportation in certain immigration cases provided an alien was (1) an LPR; (2) with more than seven years of "lawful unrelinquished domicile"; and (3) that he or she had not served more than five years in prison. INA § 212(c); 8 U.S.C. § 1182(c).

deportation.  The order did not address Defendant's eligibility for any other form of relief, and concluded by ordering Defendant deported to Mexico.

Mr. Bywater did not consult with Defendant on his decision not to file a brief and did not inform him of the IJ's adverse decision.  Although he filed a timely notice of appeal to the Board of Immigration Appeals, Mr. Bywater ultimately withdrew the appeal after he failed to submit an opening brief by the deadline.  The Notice of Appeal identified the IJ's denial of Defendant's eligibility for suspension of deportation as the sole issue for appeal.  The Notice of Appeal did not cite § 212(c) as a potential avenue for relief.  Mr. Bywater's subsequent motion to withdraw the appeal stated that, due to his conviction, Defendant was unable to qualify statutorily for the relief requested and had no further basis for the appeal.  The IJ's order was thus rendered administratively final.

Mr. Bywater did not consult with Defendant prior to withdrawing the appeal, and did not advise Defendant of the results of his case.  In fact, Defendant did not learn that he had lost his residency until sometime in 2000 when he called Mr. Bywater to inquire about the status of his case.[4]  Shortly after that conversation, Defendant received a letter from INS informing him that he had to leave the country.  Although he had recently married his United States-citizen second wife who was pregnant with their child, Defendant reported for deportation to Mexico.  After several months, Defendant's desire

---

[4] Defendant had learned from friends that immigration cases could take years and believed he had not heard from Mr. Bywater because his case was still pending.  (Dkt. 17-2, Ex. A at ¶ 17.)

to be with his young family and the need to support them financially drew him back to the United States.

In 2010, Defendant was again arrested by immigration officials. His 1996 deportation order was reinstated and he was deported. Defendant again returned to the United States to be with his family. Most recently, on October 24, 2015, Defendant was located in the District of Idaho which led to the charge filed in this case. The Indictment charges the Defendant with deported alien found in the United States, in violation of 8 U.S.C. § 1326(a) and (b)(2) and states:

> On or about October 24, 2015, in the District of Idaho, the defendant, NICOLAS RIVERA-FERRER, an alien, was found in the United States, to-wit: Jerome County Idaho, after having been previously removed from the United States to Mexico on or about August 17, 2010, at or near Tucson, Arizona, the said defendant having not obtained the consent of the Secretary of the Department of Homeland Security for reapplication for admission into the United States, in violation of Title 8, United States Code, Section 1326(a) and (b)(2).

(Dkt. 1).

Following his arraignment, Defendant filed the instant Motion to Dismiss Indictment collaterally attacking his underlying deportation order. (Dkt. 17.) The Motion contends the May 28, 1996 deportation order upon which this charge is based violated Defendant's due process rights. Specifically, Defendant challenges the IJ's failure to inform Defendant of his potential eligibility for relief under § 212(c), and argues Mr. Bywater was grossly ineffective in failing to file an application for § 212(c) relief or to pursue an appeal of the IJ's deportation order. Defendant also argues the IJ erred in holding that Defendant's 1995 Nevada state conviction, the basis for his removal, constituted a controlled substance conviction for federal immigration purposes. The

Court has reviewed the materials submitted on the Motion to Dismiss and finds as
follows.

## DISCUSSION

### 1. Standard of Law

Defendant's Motion to Dismiss is brought pursuant to 8 U.S.C. § 1326(d).
"Because the underlying removal order serves as a predicate element of an illegal reentry
offense under § 1326, a defendant charged with that offense may collaterally attack the
removal order under the due process clause." *United States v. Pallares-Galan*, 359 F.3d
1088, 1095 (9th Cir. 2004); *see also United States v. Ubaldo-Figueroa*, 364 F.3d 1042,
1047 (9th Cir. 2004); *United States v. Mendoza-Lopez*, 481 U.S. 828, 837-38 (1987)
(finding a prior deportation order cannot serve as a predicate for a subsequent prosecution
under 8 U.S.C. § 1326 when the deportation proceedings giving rise to the order were
fundamentally flawed).  "[U]nder 8 U.S.C. § 1326(d), a defendant may collaterally attack
the underlying removal order by showing first, exhaustion of 'any administrative
remedies that may have been available to seek relief against the order;' second, that 'the
deportation proceedings at which the order was issued improperly deprived the alien of
the opportunity for judicial review;' and third, that 'the entry of the order was
fundamentally unfair.'"  *United States v. Ramos*, 623 F.3d 672, 680 (9th Cir.2010)
(quoting 8 U.S.C. § 1326(d)).  An underlying removal order is fundamentally unfair if an
alien's "due process rights were violated by the defects in the underlying proceeding" and
if "he suffered prejudice as a result of the defects." *Pallares–Galan*, 359 F.3d at 1095
(citing 8 U.S.C. § 1326(d)); *Ubaldo–Figueroa*, 364 F.3d at 1048.

6

**2. Challenge to the Deportation Order**

Defendant challenges the validity of the underlying order of deportation because the IJ and his counsel failed to advise him of his potential eligibility for a waiver of deportation under § 212(c). (Dkt.17-1 at 7-18.) The Government counters that § 212(c) was not available to Defendant because he did not meet the requirement in § 212(c) that he have seven years of lawful domicile in the United States. (Dkt.18 at 4-7.)

**A. Exhaust Administrative Remedies**

The Court finds and the Government concedes the exhaustion requirement does not bar collateral review where, as here, Defendant alleges he was not properly informed that he was eligible for relief from removal.  (Dkt. 18 at 5.)  If true, any waiver of the right to appeal was neither "considered" nor "intelligent." *See United States v. Ortiz–Lopez*, 385 F.3d 1202, 1203–04 (9th Cir.2004); *Ubaldo–Figueroa*, 364 F.3d at 1049–50. This case instead turns on the other remaining factors of whether the underlying deportation order was fundamentally unfair and whether Defendant was improperly deprived of the opportunity for judicial review in light of the alleged failure to advise him as to his eligibility for § 212(c) relief.

**B. Fundamentally Unfair**

**1.  IJ's failure to advise Defendant of potential § 212(c) relief**

A deportation proceeding violates due process if it prevents the deportee from knowingly and voluntarily waiving his rights. *Ubaldo–Figueroa*, 364 F.3d at 1048. "The government bears the burden of proving valid waiver in a collateral attack of the

underlying removal proceedings," but the defendant carries the overall burden to show fundamental unfairness. *Ramos*, 623 F.3d at 680, 684.

"The Due Process Clause of the Fifth Amendment requires that an alien in immigration proceedings be 'made aware that he has a right to seek relief' so that he has 'a meaningful opportunity to appeal the fact that he was not advised of that right.'" *See United States v. Melendez–Castro*, 671 F.3d 950, 954 (9th Cir.2012) (quoting *United States v. Arrieta*, 224 F.3d 1076, 1079 (9th Cir.2000) ("[W]here the record contains an inference that the petitioner is eligible for relief from deportation, the IJ must advise the alien of this possibility and give him the opportunity to develop the issue.") (internal quotations and citation omitted). "This includes providing an alien with the opportunity to apply for relief. An alien applying for such relief has a right to present evidence in support of the claim." *Id*. (citing *Arrieta*, *supra* and 8 U.S.C. § 1229a(b)(4)(B); 8 C.F.R. § 1240.1(c); 8 C.F.R. § 1240.11(a)(2)).

An IJ has a duty to inform aliens of their eligibility for relief from removal. Immigration regulations require an IJ to inform an alien of "apparent eligibility" for relief. *United States v. Lopez–Velasquez*, 629 F.3d 894, 896 (9th Cir.2010) (citing 8 C.F.R. § 1240.11(a)(2)). "Apparent eligibility" has been interpreted to mean "where the record, fairly reviewed by an individual who is intimately familiar with the immigration laws—as IJs no doubt are—raises a reasonable possibility that the petitioner may be eligible for relief." *Id*. at 896–97 (quoting *Moran-Enriquez v. INS*, 884 F.2d 420, 423 (9th Cir.1989)). An IJ's "failure to so advise an alien violates due process and can serve as the basis for a collateral attack to a deportation order where, as here, the order is used as the

8

predicate for an illegal reentry charge under § 1326." *Id.* (citing *Ubaldo-Figueroa*, 364 F.3d 1042, 1050 (9th Cir.2004)). The Ninth Circuit has held that an IJ's failure to inform an alien of possible eligibility for discretionary relief constitutes a due process violation. *Lopez–Velasquez*, 629 F.3d at 897 n. 2.

Here, Defendant faults the IJ for failing to advise him of the possibility of relief under § 212(c). (Dkt. 17-1 at 10.)  The IJ in this case did not inform Defendant that he may qualify for § 212(c) relief, presumably because Defendant had not been an LPR for seven years. In so doing, the IJ must have concluded that Defendant's years as a temporary resident as a SAW did not count towards the seven years of "lawful unrelinquished domicile" required for § 212(c) purposes. The Government argues the IJ's failure to advise Defendant regarding § 212(c) was appropriate because, at the time, only the years Defendant lived in the United States as a LPR could be counted towards the requisite seven years of lawful unrelinquished domicile.[5]  (Dkt. 18 at 6.)

Defendant counters that a review of the state of the law reveals that whether temporary residence status could constitute "lawful unrelinquished domicile" under § 212(c) was at least an open question at the time of Defendant's deportation proceeding.

---

[5] The Defendant was granted temporary residency under the SAW program on August 27, 1987 but did not become an LPR until 1990 or 1991 (Defendant and the Government dispute the date Defendant became a LPR).  Thus, if "lawful domicile" included the 3-4 years Defendant lived in the United States as a temporary resident, he would meet the seven years of lawful domicile required for § 212(c) relief at the time of his 1995 conviction; if lawful domicile did not include Defendant's time in the United States as a temporary resident, he would not have had the requisite seven years at the time of his conviction and would have been ineligible for § 212(c) relief.

The Court agrees that a review of the law as it existed at the time of Defendant's deportation hearing is dispositive of Defendant's right to relief in this case.

Section 212(c) relief was created with the passage of the INA in 1952. A prerequisite to application for such relief is seven years of "lawful unrelinquished domicile," a term not defined in the INA. 8 U.S.C. § 1182(c) (1996). In *Matter of S---*, 5 I.&N. Dec. 116 (BIA 1953), the Bureau of Immigration Affairs ("BIA") held that lawful domicile begins to accrue only after adjustment to permanent resident status. In 1979, the Ninth Circuit issued an opinion deferring to the BIA's interpretation of lawful unrelinquished domicile. *See Castillo-Felix v. INS*, 601 F.2d 459, 463 (9th Cir. 1979) (holding that the seven years begins to run from the date the alien was admitted as a lawful permanent resident).

Thereafter, in 1986, Congress passed the Immigration Reform and Control Act of 1996 ("IRCA"), which provided a path to LPR status through certain programs for certain qualifying aliens. One such program was SAW, which allowed aliens already working in the United States who had performed at least 90 days of agricultural work during the year ending May 1, 1986 to apply for temporary resident status. *See* 8 U.S.C. § 1160. Aliens granted temporary residence status under SAW could adjust to LPR status after one or two years, depending on whether they had worked at least 90 days in each of the years ending May 1, 1984, 1985, and 1986. 8 U.S.C. § 1160(a)(2). Another path to citizenship was the IRCA amnesty provision, INA § 245A, codified at 8 U.S.C. § 1255a. The amnesty provision offered "a broad legalization program for aliens who had resided unlawfully in the United States since 1982, had been continuously present here since

1986, and who were otherwise admissible as immigrants." *Naranjo-Aguilera v. INS*, 30

F.3d 1106, 1108 (9th Cir. 1994); 8 U.S.C. § § 1255a.  If granted, temporary resident

status was effective as of the date the application was filed.  8 C.F.R. § 245a.3(m).

In 1995, the Ninth Circuit considered the holding of *Castillo-Felix* in light of the

IRCA.  *Ortega de Robles v. INS*, 58 F.3d 1355, 1360 (noting "[n]o decision of this circuit

has squarely examined the holding and reasoning of *Castillo-Felix* in light of IRCA.").

The Court determined the reasoning in *Castillo-Felix*, "did not contemplate an amnesty

program such as IRCA § 245A."  *Id*. at 1360.  The Court further explained, "[u]nder

IRCA, a 'temporary resident' alien who adjusts to 'permanent residence' must intend to

remain in the United States while in temporary status.  Under IRCA, an alien who is

physically present and intends to remain (and otherwise qualifies) is adjusted to status as

a permanent resident….  [U]nder IRCA § 245A, an alien can establish lawful domicile

for purposes of §212(c) as of the date he or she applied for amnesty."  *Id*.

The *Ortega de Robles* Court noted that IRCA "similarly" created temporary

residency under the SAW program, but did not otherwise discuss whether its holding

applied to aliens establishing residency under SAW.  *Id*. at 1359 n. 5.  In *United States v.*

*Rodriguez-Perez*, 2012 WL 2568204 (D. Idaho 2012), this Court considered whether

*Ortega de Robles* was limited to aliens who had received amnesty under § 245A, or

whether it also applied to SAW aliens.  This Court decided the former, explaining:

> Although the Ninth Circuit acknowledged in *Ortega de Robles* that SAW's
> provisions were also enacted under IRCA, it did not go on to determine whether
> its reasoning concerning § 245A would also apply to SAW applicants. *See*
> *Lopez–Velasquez*, 629 F.3d at 898 (citing *Ortega de Robles*, 58 F.3d at 1359 n. 5)
> (indicating that § 210, 8 U.S.C. § 1160, is a provision similar to § 245A, 8 U.S.C.

11

§ 1255a); *see also White v. INS*, 75 F.3d 213, 215 & n. 3 (5th Cir.1996). Just the opposite, the Ninth Circuit went on to recognize a BIA decision which found that "a crucial distinction exists between temporary residents under section 210 of the Act on the one hand, and aliens eligible for adjustment under section 245A." *Ortega de Robles*, 58 F.3d at 1360 n. 6. In that BIA decision, the court stated that "lawful temporary residents under section 210 may not apply for a waiver of inadmissibility under section 212(c) of the Act ... as that form of relief is limited to lawful permanent residents." In *Matter of Chavez–Calderon,* 20 I.&N. Dec. 744 (BIA 1993).

By recognizing the distinction between § 210 and § 245A, the Ninth Circuit effectively limited its interpretation of domicile in *Ortega de Robles* to § 245A. Moreover, the reasoning of the *Ortega de Robles* decision itself evidences that it was intended to apply to § 245A. In distinguishing *Castillo–Felix*, the Ninth Circuit's decision in *Ortega de Robles* centered on the underlying purpose of the amnesty program which was to afford a pathway to permanent residency status to aliens who had established a domicile for a period of years and who evidenced an intention to remain. Such an intention to remain is apparent in § 245A amnesty cases but is not as readily apparent for those aliens falling under § 210's SAW provisions. Because the Ninth Circuit's reasoning in *Ortega de Robles* was narrowly construed to § 245A and actually distinguished § 210 of IRCA, relief under § 212(c) was not a reasonable possibility when the IJ reviewed the record at [Rodrigues-Perez's] 1995 deportation proceeding.

*Rodriguez-Perez*, 2012 WL 2568204 at *5.

Similarly, the Court cannot find the IJ violated Defendant's due process rights in this case because it was not apparent that Defendant was eligible for § 212(c) relief at the time she issued her final order in May of 1996.[6]  However, the same cannot be said for Defendant's counsel's failure to pursue Defendant's § 212(c) eligibility.

---

[6] This Court's decision in *Rodriguez-Perez* was subsequently affirmed by the Ninth Circuit.  *United States v. Rodriguez-Perez*, No. 12-30322 (9th Cir. Sept. 3, 2013) (unpublished).

12

**2.   Immigration Counsel's failure to pursue § 212(c) relief**

Crucially, this Court's holding in *Rodriguez-Perez* involved a deportation hearing
which occurred in July of 1995.  *Id.* at *1. On November 25, 1996, after the Ninth Circuit
issued *Ortega de Robles*, and after the IJ's deportation order, but *while* Defendant's
appeal was pending, the Attorney General amended 8 C.F.R. § 212.3(f)(2).  61 Fed. Reg.
59824-01 (Nov. 25, 1996).  The revised regulation defined lawful domicile "as either a
lawful permanent resident or a lawful temporary resident pursuant to section 245A *or
section 210 of the Act*."  *Id*. (emphasis added).  Promulgated as an interim rule, the
regulation was effective immediately and applied to all aliens who had "filed an
application for section 212(c) relief as of the effective date."  *Id*.  The interim rule
became permanent without revision the following year.  62 Fed. Reg. 43466-01 (Aug. 14,
1997).

Although Defendant had not filed an application for § 212(c) relief by November
25, 1996, the date the revised regulation passed, he could have done so had his counsel
advised him of his potential eligibility for such relief. That his counsel should have been
aware of such potential eligibility is illustrated by the state of immigration law at the time
of Defendant's deportation proceedings.  Specifically, the question of the appropriate
interpretation of 8 C.F.R. § 212.3(f)(2) was certified to the Attorney General in January
of 1996.  *In re Ponce De Leon-Ruiz*, 21 I.&N., Dec. 154 (BIA 1996); *see also In re
Cazares-Alvarez*, 21 I.&N. Dec. 188, 189 (BIA 1996).  Defendant's immigration hearing
was held shortly thereafter, in February of 1996.  After the hearing, on February 16,

1996, the Fifth Circuit became the first circuit court to squarely address whether temporary residency under § 210 constituted lawful unrelinquished domicile. *White v. INS*, 75 F.3d 213, 215 (5th Cir. 1996). It held that it did, criticizing the coherence of INS's definition of "domicile." *Id.* at 215-16.[7] Given this development, Defendant's counsel should have been aware of and pursued Defendant's § 212(c) eligibility both before the IJ issued her final order in May of 1996 and during Defendant's subsequent appeal.[8]

---

[7] In so holding, the *White* Court explained:

> [F]or a domicile to be lawful, an alien need not obtain lawful permanent residency but must 'have the ability under the immigration laws, to form the intent to remain in the United States indefinitely.' A person may form the requisite intent when she becomes a "lawful temporary resident" under IRCA because the statute provides for her eventual adjustment to permanent resident status. Therefore, it is entirely consistent with IRCA for an alien to maintain a 'lawful unrelinquished domicile' without first having been 'lawfully admitted for permanent residence.'

*Id.* (quoting *Castellon-Contreras v. INS*, 45 F.3d 149, 153-54 (7th Cir. 1995)).

[8] In 1996, Congress substantially narrowed the class of aliens eligible for § 212(c) relief via the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). Pub. L. No. 104-132, 110 Stat. 1214. For instance, AEDPA barred § 212(c) eligibility for aliens, like Defendant, with a drug-related conviction. *Id.* On September 30, 1996, Congress then eliminated § 212(c) relief entirely with the passage of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA"). Pub. L. No, 104-208, 110 Stat. 3009-546. However, the Ninth Circuit and the Supreme Court later held that both AEDPA and IIRIRA did not apply retroactively to aliens, like Defendant, who were convicted of crimes prior to their enactment. *Magana-Pizano v. INS*, 200 F.3d 603, 611 (9th Cir. 19999) (ADEPA does not apply to proceedings commenced before its passage); *Pascua v. Holder*, 641 F.3d 316, 321 (9th Cir. 2011) (IIRIRA does not apply to proceedings commenced before its passage, even if alien's criminal conviction is post-IIRIRA); *INS v. St. Cyr*, 533 U.S. 289, 326-326 (2001) (AEDPA and IIRIRA did not apply retroactively to any alien who pleaded guilty prior to passage of AEDPA or IIRIRA).

14

An attorney's duty to advocate on behalf of his client extends beyond an IJ's duty to advise an alien of potential avenues for relief.  While there is no constitutional right to counsel in deportation proceedings, due process must be accorded under the Fifth Amendment.  *Dearinger ex rel. Volkova v. Reno*, 232 F.3d 1042, 1045 (9th Cir. 2000). To show a due process violation, an alien must prove "not merely ineffective assistance of counsel, but assistance which is so ineffective as to have impinged upon the fundamental fairness of the hearing in violation of the fifth amendment due process clause." *Magallanes-Damian v. INS*, 783 F.2d 931, 933 (9th Cir. 1986); *see also Lata v. INS*, 204 F.3d 1241, 1246 (9th Cir. 2000).  To establish ineffective assistance of counsel in immigration proceedings in violation of the right to due process, a petitioner must show (1) that "the proceeding was so fundamentally unfair that the alien was prevented from reasonably presenting his case," and (2) prejudice.  *Lin v. Ashcroft*, 377 F.3d 1014, 1023-24 (9th Cir. 2004) (quoting *Lopez v. INS*, 775 F.2d 1015, 1017 (9th Cir. 1985) and *Rodriguez-Lariz v. INS*, 282 F.3d 1218, 1226 (9th Cir. 2002)).

An alien's due process rights, upon retaining counsel, "'include the right to have an attorney who would present a viable legal argument on his behalf supported by relevant evidence[.]" *United States v. Lopez-Chavez*, 757 F.3d 1033, 1041 (9th Cir. 2014) (quoting *Lin*, 377 F.3d at 1025).  Competent counsel must undertake the research necessary to understand the case law relevant to their client's claims.  *Lopez-Chavez*, 757 F.3d at 1041-42; *see also Santiago-Rodriguez v. Holder*, 657 F.3d 820, 835 (9th Cir. 2011) (finding an attorney to be ineffective where she did not have "sufficient knowledge of the facts to make a strategic judgment based on plausible statutory interpretations.");

15

*Lin*, 377 F.3d at 1024 (finding attorney's "lack of preparation prevented her from researching and preparing basic legal arguments fundamental to the asylum claim").

Competent counsel must also be cognizant of pending legislative changes that could impact their client. *Lopez-Chavez*, 757 F.3d at 1042 (citing Third Circuit case with approval where attorney "'had not done enough research to know of [an impending treaty], let alone whether it would apply to [his client's] claim.") (quoting *Rranci v. Att'y Gen. of U.S.*, 540 F.3d 165, 175 (3d Cir. 2008)).  Where, as here, a key legal issue is unsettled, competent counsel must raise the issue and pursue an appeal all the way to the pertinent federal circuit court, if necessary. *Lopez-Chavez*, 757 F.3d at 1041 ("[N]o competent attorney would have failed to appeal to the BIA and then petition the Seventh Circuit to answer the dispositive open question.").

Mr. Bywater's unilateral decision not to pursue Defendant's § 212(c) eligibility, and to waive the opportunity to preserve Defendant's position in anticipation of the Attorney General's action, cannot be deemed a reasonable strategic or tactical decision. *Singh v. Holder*, 658 F.3d 879, 886 (9th Cir. 2011) ("It is nigh impossible to imagine how a competent attorney would make a conscious decision to pursue a course leading to certain failure, when faced with several paths to success.")  Moreover, "[n]othing in the transcript or record suggests that this was a strategic or tactical decision, let alone an informed one." *Lopez-Chavez* 757 F.3d at 1042.  Mr. Bywater never raised the prospect of § 212(c) relief—either before the IJ or with Defendant.  In his dismissal of the appeal before the BIA, Mr. Bywater affirmatively asserted that Defendant had "no further basis for this appeal."  (Dkt. 17-1, Ex. O at 1.)  Mr. Bywater never advised Defendant of any

16

potential avenues for relief, failed to file scheduled briefing on Defendant's behalf before the IJ and Board of Immigration Appeals, dismissed Defendant's appeal without consulting him, and failed to even call Defendant to inform him of the outcome of his case.  Most significantly, Mr. Bywater never filed a motion to withdraw his pending withdrawal of the appeal, or disclosed his mistake to Defendant, when, 13 days after moving to withdraw the appeal, the Attorney General issued a regulation resolving any doubt that Defendant would have been eligible to apply for § 212(c) relief.[9]  Thus, Mr. Bywater cannot be credited for simply making a tactical decision which turned out to be wrong.

In sum, the Court finds Mr. Bywater's failure to communicate with his client, to do any meaningful research, or to pursue potential avenues for relief not only "prevented [Defendant] from reasonably presenting his case" but rendered the proceedings "fundamentally unfair."  *Lin*, 377 F.3d at 1023-24.

c.    **Prejudice**

To show ineffective assistance of counsel in immigration proceedings, Defendant must show not only, as he has, that his counsel's deficient performance rendered the proceedings fundamentally unfair, but also that counsel's performance resulted in prejudice. *Lopez-Chavez*, 757 F.3d at 1043 (citing *Correa-Rivera v. Holder*, 706 F.3d 1128, 1133 (9th Cir. 2013)).  Prejudice is established when "the performance of counsel

---

[9] The Government does not contest such facts in its Opposition to Defendant's Motion to Dismiss Indictment.

was so inadequate that it may have affected the outcome of the proceedings.'" *Id.* (citation omitted).  Here, the result of Mr. Bywater's inaction was that Defendant never filed an EOIR I-191 to apply for § 212(c) relief.  With respect to the SAW temporary residency eligibility issue, the prejudice to Defendant is beyond dispute.  As explained above, during the pendency of Defendant's appeal, the Attorney General adopted a rule resolving any doubt that § 210 temporary residency counted toward the seven years of lawful domicile required by § 212(c).  61 Fed.Reg. 59824-01. Defendant was accordingly eligible for § 212(c) relief, which, if granted, would have terminated his deportation proceeding and allowed him to remain in the United States as a LPR.  Thus, Mr. Bywater's ineffectiveness not only may have affected, but actually did affect, the outcome of the proceedings in this case.

The Court concludes that Defendant has showed ineffective assistance of counsel in his immigration proceedings in violation of his right to due process, as well as the requisite prejudice.  Because Defendant received ineffective assistance of counsel in his immigration proceedings in violation of due process, and was prejudiced thereby, he has necessarily established that, for the purposes of the collateral attack on his removal, "the entry of the order [of removal] was fundamentally unfair," thus meeting the statutory requirement under 8 U.S.C. § 1326(d).  *Ubaldo-Figueroa*, 364 F.3d at 1048.  Just as it rendered the proceeding fundamentally unfair, Mr. Bywater's ineffectiveness also caused Defendant's failure to exhaust administrative remedies and deprived him of his opportunity for judicial review.  *Lopez-Chavez*, 757 F.3d at 1044 (citing *United States v.*

18

*Gonzalez-Villalobos*, 724 F.3d 1125, 1131 n. 9 (9th Cir. 2013*); *United States v. Cerna*, 603 F.3d 32, 35 (2d Cir. 2010).

Because Defendant satisfies all three requirements necessary to sustain a collateral challenge to his underlying removal, 8 U.S.C. § 1326(d), dismissal of the indictment is appropriate. *Lopez-Chavez*, 757 F.3d at 1044.  In light of this holding, the Court need not address Defendant's alternative ground for relief, that his conviction under N.R.S. § 453.337 did not constitute an aggravated felony or a law relating to a controlled substance.

## ORDER

**NOW THEREFORE IT IS HEREBY ORDERED:**

1.   Defendant's Motion to Dismiss Indictment (Dkt. 17) is **GRANTED**.

DATED: May 3, 2016

Edward J. Lodge
United States District Judge